NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1162
_____


THOMAS P. KELLY, JR.,
                                        Appellant

v.

THE PENN MUTUAL LIFE INSURANCE COMPANY;
RELIANCE STANDARD LIFE INSURANCE COMPANY


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:09-cv-02478)
District Judge: Honorable Katharine S. Hayden
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 12, 2019

Before: HARDIMAN, SCIRICA, and COWEN, *Circuit Judges*.

(Filed:  February 28, 2019)
_____

OPINION[*]
_____
_____


_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

This appeal arises under the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* The District Court held that Thomas P. Kelly, Jr. was entitled to 24 months' worth of disability benefits because he could not perform his own occupation. The Court later found that Kelly could perform some occupation, so it denied his request for more benefits. Kelly now appeals three orders entered by the District Court. We will affirm.

I[1]

We begin by summarizing the facts and prolix procedural history of this case, which began in November 2005 when Kelly injured his spine in a car accident. About six months after his accident, Kelly applied for disability benefits under an ERISA plan (the Plan) sponsored by his employer, Penn Mutual Life Insurance Company, and funded and administered by Reliance Standard Life Insurance Company. *See Kelly v. Reliance Standard Life Ins. Co.*, 2011 WL 6756932, at *2 (D.N.J. Dec. 22, 2011).

Reliance used the Plan's definition of disability to evaluate Kelly's application. Under the Plan, to receive benefits for the first 24 months of disability, a participant must show he cannot perform his "regular occupation." App. 258. The standard then becomes harder to satisfy, as the participant must show he cannot perform "any occupation . . . that [his] education, training[,] or experience will reasonably allow." *Id.*

---

[1] The District Court had jurisdiction under 29 U.S.C. § 1132(e). We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's summary judgment is plenary, and we apply the same standard as the District Court. *E.g.*, *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

Reliance denied Kelly's initial claim after determining that he was capable of performing his "regular occupation." Kelly appealed, and in the first of three remands to Reliance, the District Court held that Kelly could offer more information supporting his claim because Reliance's administrative record was deficient. *See* Kelly Br. 15; *Kelly v. Reliance Standard Life Ins. Co.*, 2015 WL 3448033, at *1 (D.N.J. May 28, 2015). Kelly then provided supporting information, but he also claimed for the first time that he was disabled under the more stringent "any occupation" standard, which applies only to those seeking more than 24 months' benefits.

Reliance denied Kelly's claim a second time, and on December 22, 2011, the District Court again found Reliance erred. *See Kelly*, 2011 WL 6756932, at *3, *5–12. This time, the Court held that Reliance had been arbitrary and capricious in reviewing medical evidence and analyzing Kelly's regular occupation. *Id.* at *5–11. So the Court awarded Kelly 24 months' benefits, but because Reliance had never evaluated whether Kelly was entitled to more benefits under the "any occupation" standard, it remanded that claim for further review. On this second remand, Kelly sought over 60 months' benefits. Reliance conceded it owed Kelly 24 months' benefits under the "regular occupation" standard but insisted it still needed to investigate whether Kelly satisfied the "any occupation" standard.

Kelly appealed to the District Court, arguing that the Court had already (in its December 22, 2011 order) found Reliance owed him benefits under the "any occupation" standard. In a May 29, 2015 order, the Court disagreed. *See Kelly*, 2015 WL 3448033, at *2–4. It said it had found no such thing and that, in any case, it would have been

3

powerless to do so. *Id.* at *2–3. The Court thus remanded Kelly's claim to Reliance for a third and final time.

On this final remand, Reliance denied Kelly's claim for more than 24 months' benefits under the "any occupation" standard. And on cross-motions for summary judgment, the District Court granted summary judgment to Reliance and Penn Mutual on December 31, 2017.[2] App. 53–54. It held Reliance's decision was not arbitrary and capricious because the record before Reliance supported the finding that Kelly could perform at least full-time sedentary work. App. 50.

II

In this appeal, Kelly challenges: (1) the District Court's December 22, 2011 order awarding 24 months' benefits and remanding to Reliance; (2) its May 29, 2015 order declining to award benefits under the "any occupation" standard; and (3) its December 31, 2017 order upholding Reliance's denial of "any occupation" benefits. He makes essentially two arguments. First, he claims the District Court should have awarded him 55 months' benefits instead of remanding. Second, he asserts that on remand, Reliance should have granted him benefits under the "any occupation" standard through the end of his coverage. We address each argument in turn.

A

Kelly first argues that once the District Court held that he could not perform his "regular occupation," it followed that he could not perform "*any* occupation" through the

---

[2] Kelly did not oppose Penn Mutual's motion for summary judgment, App. 53, and his arguments on appeal do not mention Penn Mutual.

date of its order (December 22, 2011). And if he was disabled through the order date, Reliance would owe him 55 months' benefits.

This argument suffers from a logical flaw. Just because the District Court found Kelly could not perform his *regular* occupation does not mean it found Kelly could perform *no* occupation. Kelly's regular job is merely one of many jobs that his "education, training[,] or experience [would] reasonably allow." App. 258. Similarly, while Reliance was arbitrary and capricious in deciding Kelly could perform his regular job, it does not follow that Reliance also erred when it determined that Kelly failed to show he could not perform "any occupation." *See Conkright v. Frommert*, 559 U.S. 506, 517–19 (2010); *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 856 (3d Cir. 2011) ("[W]here benefits are improperly denied at the outset, it is appropriate to remand to the administrator for full consideration of whether the claimant is disabled."). Thus, the District Court properly remanded Kelly's "any occupation" claim to Reliance.[3]

B

Kelly next argues that even if the latest remand were valid, Reliance should have awarded him benefits under the "any occupation" standard. This argument proceeds in two parts. First, Kelly requests a heightened standard of review because Reliance not only has a financial conflict of interest (as both funder and administrator of the Plan), but is also procedurally biased against him. Second, Kelly asserts that under this heightened

---

[3] Contrary to Kelly's argument, *McCann v. Unum Provident*, 907 F.3d 130 (3d Cir. 2018), does not hold otherwise. *McCann* excused a claimant's failure to exhaust administrative remedies. *See id.* at 151–52. Exhaustion is not at issue here.

5

standard, Reliance's evaluation of the medical evidence was haphazard and incorrect. He claims Reliance cherry-picked evidence and erred in finding Kelly could work a job that his "education, training[,] or experience [would] reasonably allow." App. 258.

Neither part of this argument is persuasive. We review benefit denials under the deferential "arbitrary and capricious" standard where, as here, a plan grants its administrator discretionary authority. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 & n.2 (3d Cir. 2012); App. 163 (Reliance Plan). Conflicts of interest, whether financial or procedural, are merely a factor *within* our deferential analysis. *See Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 250–52 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1032 (2018).

We see no reason to reject Reliance's assessment of Kelly's medical condition. The record contains ample evidence that Kelly could perform an occupation allowed by his education, training, or experience. Four independent doctors conducting three separate reviews of Kelly's file have concluded Kelly is not totally disabled. Most recently, as part of its appeals process on remand, Reliance referred Kelly's file to a physician specializing in internal medicine. After reviewing 110 pages of exam reports and laboratory results, she determined Kelly has had "no physical limitations or restrictions" since May 2008. App. 936. Indeed, as Reliance notes, public records show Kelly earned admission to the New Jersey bar and co-founded a law firm during his time

6

of purported total disability. Thus, Reliance was not arbitrary and capricious in declining to find Kelly disabled under its "any occupation" standard.[4]

Kelly suggests that his receipt of Social Security Disability Insurance (SSDI) benefits proves otherwise. But while an SSDI benefits decision might be relevant to an ERISA plan administrator, a plan's benefits policies may differ from those that govern Social Security disability benefits. *See generally* 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1505. Thus, Kelly concedes that SSDI decisions do not bind Reliance because Reliance has not incorporated SSDI policies into its Plan. Reply Br. 21; *see Moats v. United Mine Workers of Am. Health & Ret. Funds*, 981 F.2d 685, 689 (3d Cir. 1992). And even on its face, Kelly's SSDI decision hardly helps his ERISA case, because the Social Security Administration found Kelly can perform some sedentary work. App. 1022.

\* \* \*

For the reasons stated, we will affirm the orders of the District Court.

---

[4] To the extent there are gaps in the record, they result from Kelly sandbagging Reliance. Kelly evaded Reliance's repeated requests for updated medical records, information from his successful SSDI hearing, and more. *See, e.g.*, App. 902–04 (Reliance's June 5, 2015 letter to Kelly); App. 957–58 (Reliance's July 22, 2015 follow-up); App. 960–63 (Kelly's September 4, 2015 response).

7